UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RACHEL TOMPKINS, PERSONAL
REPRESENTATIVE OF THE ESTATE OF
CHARLES BROWN, JR.,

       Plaintiff,

v.                                                Case No. 14-13332

CITY OF WOODHAVEN POLICE OFFICER          HON. AVERN COHN
DENNIS DEWEESE, CITY OF WOODHAVEN
POLICE OFFICER FRANK ZDANKIEWICZ, and
CITY OF WOODHAVEN, a municipal corporation,
jointly and severally,

       Defendants.
_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 24).

### I.  INTRODUCTION

This is a 42 U.S.C. § 1983 case with pendent state law claims resulting from a fatal police shooting. Plaintiff Rachel Tompkins (Tompkins), personal representative of the estate of Charles Brown, Jr. (Brown), is suing the City of Woodhaven (the City) and Woodhaven police officers Dennis DeWeese (DeWeese) and Frank Zdankiewicz (Zdankiewicz).[1]

The complaint (Doc. 1) is in three counts:

Count I       Constitutional Deprivation – 42 U.S.C. § 1983

Count II      Liability as to Defendant City of Woodhaven – 42 U.S.C. § 1983

Count III     Gross Negligence, Willful and Wanton Misconduct, Assault,

                     Battery, Intentional Infliction of Emotional Distress – All Defendants.

---

[1] Collectively Defendants were appropriate.

1

Tompkins concedes that Count II should be dismissed. (Doc. 26 at 9). The Court previously declined to exercise supplemental jurisdiction over the state law claims and dismissed Count III without prejudice. (Doc. 5).

Now before the Court is Defendants' Motion for Summary Judgment on Count I, the sole remaining claim, on the grounds that there is a lack of a genuine issue of material fact over whether or not DeWeese and Zdankiewicz acted reasonably based on the totality of the circumstances. (Doc. 24). For the reasons that follow, the motion will be granted and the case dismissed.

## II.  BACKGROUND

### A.

On June 19, 2012, City of Woodhaven police officers DeWeese and Zdankiewicz were dispatched to a Wal-Mart to investigate a complaint of a male and a female attempting to shoplift. The male suspect was later identified as Brown. The dispatcher advised the officers that the female suspect had fled the store and the male suspect had entered a stolen, red Oldsmobile. [2]

Upon entering the Wal-Mart parking lot, DeWeese was directed by a Wal-Mart employee to a vehicle matching the given description which was headed toward a parking lot exit. DeWeese activated the overhead lights on his vehicle and parked on an angle across the lane of traffic exiting the parking lot. Brown pulled to within approximately 10 feet of the front of DeWeese's vehicle and stopped. DeWeese exited

---

[2] The dispatcher provided a Michigan license plate number and advised Zdankiewicz and DeWeese that the Oldsmobile was stolen from Riverview, Michigan. DeWeese ran the license plate in his police vehicle computer to confirm that the Oldsmobile was in fact stolen.

his vehicle with his service weapon drawn and pointed at Brown.[3] DeWeese could see that Brown was holding an object in his right hand, but he could not determine what it was because of the position of Brown's hands.[4] DeWeese repeatedly yelled loudly at Brown to show his hands.

Meanwhile, on his arrival from a different entrance into the Wal-Mart parking lot, Zdankiewicz activated the lights on his police vehicle, located the now stopped Oldsmobile and observed DeWeese outside his police vehicle standing between it and the open driver side door. Zdankiewicz parked behind Brown, exited his vehicle, pulled out his service weapon, and pointed it at Brown.

Once stopped, Brown initially shrugged his shoulders and made non-verbal movements like he was going to comply with DeWeese's orders. At that point, Brown began to open his driver side door as DeWeese began to walk around the front of his own vehicle to affect an arrest. DeWeese continued to order Brown to show his hands.

In DeWeese's words, the following then occurred:

> As I was in front of his vehicle and in between his vehicle and mine, the driver abruptly closed his door and squealed his tires accelerating backwards and rammed into Officer Zdankiewicz's vehicle, which had been pulled in behind the suspect vehicle. This put Officer Zdankiewicz in eminent danger for his life. Upon ramming Officer Zdankiewicz's vehicle I observed the vehicle accelerate forward toward me, putting me in eminent danger. I ordered the driver to stop but he did not comply. The driver was looking directly at me and made eye contact with me and continued to drive directly toward me. Feeling an immediate threat for my life and believing there was no other reasonable means to avoid being struck by the vehicle, I began moving to my right to avoid a crossfire situation with Officer Zdankiewicz and fired my weapon at the driver in an attempt to stop the deadly threat.

---

[3] DeWeese's position was not blocking Brown. Brown could have avoided DeWeese and turned into an aisle instead of driving directly toward DeWeese. (Doc. 26, Ex. B at 14-15,18).

[4] The object later was discovered to be a screwdriver. (Doc. 26, Ex. B at 18).

3

(Doc. 24, Ex. 1). At the same moment, Zdankiewicz fired his weapon, pointing toward Brown as well. The defendants' shots fatally wounded Brown.

The depositions of Zdankiewicz and DeWeese and multiple statements taken from on-scene witnesses confirmed the above description of events. (Doc. 24, Ex. 3; Doc 26, Exs. A & B).

Following a review by the Wayne County Prosecutor's Office's Public Integrity Unit, the City was notified "[i]t is the conclusion of the Public Integrity Unit that [Officers DeWeese's and Zdankiewicz's] actions constituted self-defense and/or the defense of others involving a fleeing felon." (Doc. 24, Ex. 4). No criminal charges were filed against the defendants. Id.

**B.**

Zdankiewicz and DeWeese each signed a form certifying that prior to June 19, 2012, they had read and understood the Police Department's policy regarding the use of force. According to the policy, "lethal force" is defined as "any force used by an officer that has a reasonable probability to cause death or serious physical injury." (Doc. 24, Ex. 2). "The policy also defines Last Resort situations in part as situations wherein certain immediate and drastic measures must be undertaken by an officer in order to protect human life." Id. According to department policy, officers are trained to "stop the threat" and to "shoot at center mass." (Doc. 26, Ex. A at 21).

**C.**

Tompkins' sole claim at this point in the case is that DeWeese and Zdankiewicz each used excessive force against Brown (Count I). (Doc. 1).

Defendants have filed a motion for summary judgment (Doc. 24) and a brief statement of material facts (Doc. 25). Tompkins has filed a response arguing that genuine issues of material fact preclude summary judgment against the defendants individually. Tompkins has conceded that Count II against the City should be dismissed. (Doc. 26). Defendants have filed a reply. (Doc. 27).

### III. LEGAL STANDARD

The standard for summary judgment is well known and is not repeated in detail. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact drawing "all justifiable inferences in the light most favorable to the non-moving party." Hager v. Pike Cnty. Bd. of Ed., 286 F.3d 366, 370 (6th Cir. 2002).

### IV.   DISCUSSION

### A.

When analyzing a section 1983 claim, a two-step inquiry is made. First, "the court must determine whether the facts alleged show the officer's conduct violated a constitutional right." Cass v. City of Dayton, 770 F.3d 368, 374 (6th Cir. 2014)(citations omitted). Second, the court must determine "whether that right was clearly established" at the time of the violation. Id. (citation omitted).

Here, Tompkins says that DeWeese and Zdankiewicz violated Brown's Fourth Amendment rights through the use of excessive force. "[A]ll claims that law enforcement officers have used excessive force...in the course of an arrest, investigatory stop, or

other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard..." Schreiber v. Moe, 596 F.3d 323, 331-32 (6th Cir. 2010) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). The Supreme Court has summarized the reasonableness standard as follows:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight…With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

Graham, 490 U.S. at 396–97 (citations omitted). The Sixth Circuit "has noted that Graham's prohibition on using 20/20 hindsight carries great weight when all parties agree that the events in question happened very quickly, as here." Untalan, 430 F.3d at 315 (citation omitted).

Graham calls for balancing "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight" when determining whether the use of deadly force violates a plaintiff's Fourth Amendment rights. Graham, 490 U.S. at 396. The Sixth Circuit "has made the threat factor from Graham a minimum requirement for the use of deadly force: such force may be used only if the officer has probable cause to believe that the suspect poses a threat of severe physical harm, either to the officer or others." Untalan v. City of Lorain, 430 F.3d 312, 314 (6th Cir. 2005)

6

**B.**

In support of their motion, Defendants say there is a lack of a genuine issue of material fact over whether DeWeese and Zdankiewicz violated Brown's constitutional rights under the Fourth Amendment. They say that the use of force was not excessive and that DeWeese and Zdankiewicz acted objectively reasonably based on the totality of the circumstances. The Court agrees. [5]

In response to the motion, Tompkins raises two meritless arguments. First, Tompkins contends that there is a genuine issue of material fact as to whether Brown was attempting to comply with the officers' commands. This is a misrepresentation of the undisputed facts. According to the defendants' reports as well as multiple witness statements at the scene, Brown ignored commands to stop and purposely drove his vehicle backward into Zdankiewicz's vehicle and forward toward DeWeese.

Alternatively, Tompkins says that the defendants' use of force exceeded what was reasonable and necessary under the circumstances. In support, Tompkins says that Brown made no threatening gestures when he initially started to get out of his vehicle, he was unarmed at the time he was shot, and he was driving at a slow rate when he drove forward toward DeWeese.

Tompkins' argument is directly contradicted by Sixth Circuit law and the facts of record. First, while Brown made no overt threatening gestures while initially getting out of his vehicle, he failed to comply with the defendants' commands to show his hands or stop his vehicle.

---

[5] Because Tompkins fails to establish that DeWeese and Zdankiewicz violated a constitutional right, the Court only addresses the first step in the two-step qualified immunity analysis detailed above. <u>Cass</u>, 770 F.3d at 374.

7

Second, both defendants' statements and the accounts of witnesses say that Brown drove his vehicle rapidly – not slowly – backward toward Zdankiewicz and forward toward DeWeese.

Third, while Brown may only have had a screwdriver in his hand and not a classic weapon, the Sixth Circuit has deferred to a police officer's decision to use deadly force on an unarmed suspect driving a vehicle when the officer had reasonable belief that the vehicle presented an imminent danger. <u>Cass</u>, 770 F.3d at 375 (6th Cir. 2014)("Although each case is tethered to its specific factual context, the critical question is typically whether the officer has reason to believe that the [fleeing] car presents an imminent danger to officers and members of the public in the area. An officer is justified in using deadly force against a driver who objectively appears ready to drive into an officer or bystander with his car"). <u>See also</u> <u>Smith v. Freland</u>, 954 F.2d 343 (6th Cir. 1992)(holding that a police officer was justified in using deadly force to stop a suspect from fleeing by vehicle after the suspect had twice attempted to strike a police vehicle and endangered other officers attempting to stop him). <u>See also</u> <u>Scott v. Clay County</u>, 205 F.3d 867 (6th Cir. 2000)(holding that a police officer did not violate the Fourth Amendment when he used deadly force on the driver of a vehicle that had nearly hit an unmarked police vehicle at 85 miles per hour and then accelerated toward the officer in question).

In both <u>Smith</u> and <u>Scott</u>, "there was no question that the lives of the officers…were endangered by the fleeing suspects. Each suspect demonstrated multiple times that he either was willing to injure an officer that got in the way of escape or was willing to persist in extremely reckless behavior that threatened the lives of all

8

those around." Smith v. Cupp, 430 F.3d 766, 775 (6th Cir. 2005). Further, in both cases, the "officers reacted with deadly force only after an extended interaction between police and the suspect proved that the suspect was likely to continue to threaten the lives of those around him in his attempt to escape." Id. Therefore, the "use of force was held to be reasonable as a matter of law in both cases." Id.

Similarly here, the circumstances justify the defendants' use of deadly force. Brown was suspected of shoplifting and possession of a stolen vehicle. He failed to comply with the commands to show his hands when he initially attempted to exit the vehicle. Instead of listening to the officers, he revved the vehicle's engine and drove backward directly into Zdankiewicz's police vehicle and then forward directly at DeWeese. The position of DeWeese and his parked vehicle were not blocking Brown's vehicle entirely. Brown could have avoided DeWeese and turned right into an aisle, but he actively made the decision not to. While both officers had their weapons drawn upon arriving at the scene, neither discharged their weapon until Brown began to drive directly toward DeWeese and they both believed Brown to be an imminent, deadly threat. Like in Cupp, Brown demonstrated multiple times that he was willing to act recklessly and injure any officer that got in the way of his escape. Cupp, 430 F.3d at 775.

In sum, DeWeese and Zdankiewicz were forced to make split-second decisions based on the circumstances before them. There is no genuine issue of material fact that the decision to use deadly force in this situation was objectively reasonable. Brown's Fourth Amendment right was not violated.[6]

---

[6] Separately, Plaintiff filed the section 1983 claim against both the city and the officers in their official capacity. The claims against the officers individually are duplicative and

## V.  CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is

GRANTED. The case is DISMISSED.

SO ORDERED.


                                              S/Avern Cohn
Dated: April 20, 2016                         AVERN COHN
Detroit, Michigan                             UNITED STATES DISTRICT JUDGE

---

should be dismissed. Elbelt v. County of Ogemaw, 231 F. Supp. 2d 563, 568 (E.D.
Mich. 2002)(holding that official capacity claims are the equivalent of a suit against the
government entity, and as such, the plaintiff's official capacity claims are duplicative and
should be dismissed).